IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____
                                                          )
ANCHOR SAVINGS BANK FSB,           )
                                                          )
              Plaintiff,                  )
                                                          )
              v.                              )    No. 95-39C
                                                          )    (Judge Block)
THE UNITED STATES,                         )
                                                          )
             Defendant.               )
_____)

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION ON REMAND
FOR CORRECTION OF AWARD OF MITIGATION DAMAGES**

      As set forth in Anchor's initial brief, this Court determined that Anchor's mitigation damages, as measured by the NAMCO acquisition cost, should be reduced in order to avoid double-counting NAMCO's retained earnings "over the same period" as Anchor's lost profits award. <u>Anchor Savings Bank, FSB v. United States</u>, 81 Fed. Cl. 1, 133 (2008). Believing no better evidence to be available, the Court offset the mitigation award by NAMCO's "consolidated assets, including retained earnings," *id.* at 134, thereby reducing the award by NAMCO's retained earnings through 1997, even though the Court only awarded lost profits through 1995. Plaintiff's Motion on Remand for Correction of Award of Mitigation Damages (June 11, 2010) at 2-4 ("Motion"). In fact, evidence was available to calculate NAMCO's retained earnings only through year-end 1995, and, we respectfully submit, the Court erred by not making that calculation. Motion at 4-5.

      The defendant's Response in Opposition ("Response") rests on two erroneous premises: first, that the Court determined that mitigation damages were limited to the premium paid in the

NAMCO acquisition, and second, that Anchor is somehow trying to resurrect its claim for lost profits for 1996-97.  Both premises are squarely refuted by this Court's own prior rulings.  The government itself then attempts its own act of resurrection, raising its old argument that "capital has no cost," which this Court has time and time again rejected.  The defendant is unable to refute the common-sense proposition that this Court erred in reducing Anchor's mitigation damages by NAMCO's retained earnings for 1990-97, when it only awarded Anchor lost profits for 1990-95.

> **1.    The Court did not hold that mitigation costs are limited to the purchase premium.**

The government mischaracterizes this Court's prior ruling, stating that "The Court awarded mitigation damages as measured by the premium paid in 1997 to purchase NAMCO," and that the Court "refused to award [NAMCO's total purchase price of $351 million] because it would include NAMCO's retained earnings."  Response at 2.  The government suggests that the Court determined that the recoverable mitigation cost included only the premium, and no retained earnings.  *Id.* at 9 (characterizing "the Court's decision only to award NAMCO's premium").

That is not what this Court held.  This Court specifically ruled that "the costs of acquiring NAMCO are properly the subject of Anchor's damages claim," and that the starting point for calculating those costs was "the full cost of the NAMCO acquisition."  81 Fed. Cl. at 126, 132-33 (emphasis added).  It was only to the extent that the portion of the "full cost" of NAMCO consisting of retained earnings was "duplicative" of Anchor's lost profits that the NAMCO purchase price would be offset.  Anchor Savings Bank, FSB v. United States, 597 F.3d 1356, 1373 (Fed. Cir. 2010) ("As we understand it, the trial court determined that Anchor would have been entitled to recover the full purchase price of NAMCO, were it not for a concern about

double counting profits from both RFC and NAMCO during 'the same 1990-97 period.'") (emphasis added).

With that understanding, there was no basis to eliminate NAMCO's retained earnings beyond 1995. As both this Court and the government's expert made plain, an offset was only required to reflect NAMCO's retained earnings "over the same period" as Anchor's lost profits award. 81 Fed. Cl. at 133. The Court agreed with Dr. Carron that "<u>if</u> the court were to award plaintiff damages based on RFC's lost profits <u>from 1990 to 1997</u>, it would be duplicative to also reimburse" the retained earnings "that built up <u>over the same 1990-97 period</u>." *Id.* (emphasis added). Because the Court only awarded lost profits for the period 1990-95, it should only have offset Anchor's mitigation damages by NAMCO's retained earnings for "the same period," 1990-95.

The government's fallacy is most apparent when it states that "because the Court decided that it was 'appropriate to award plaintiff lost profits' -- <u>of any amount, covering any period</u> -- the Court determined that awarding any NAMCO retained earnings would result in a 'windfall for plaintiff.'" Response at 6 (emphasis added); *see also id.* at 9 ("The Court explained that it was avoiding the windfall that would result from awarding both lost profits and NAMCO's retained earnings -- <u>regardless of the specific years to which the lost profits and retained earnings were attributed</u>.") (emphasis added). This interpretation of the Court's ruling is fabricated from thin air. The Court never held that NAMCO's retained earnings, which were a component of "the full cost of the NAMCO acquisition," should be offset from the mitigation award *in toto*, "regardless of the specific years" for which lost profits were awarded. Rather, as the quotations from the Court's decision in the preceding paragraph make absolutely clear, the Court merely held that retained earnings should be offset to the extent the court had already awarded Anchor

WAI-2973140v1

RFC's lost profits for <u>an overlapping period</u>. 81 Fed. Cl. at 133.  Double-counting only became an issue, the Court said, when inclusion of retained earnings in the mitigation award "would provide plaintiff with RFC's profits <u>and</u> NAMCO's profits <u>over the same period</u>."  *Id.* (second emphasis added).

### 2. Anchor is not seeking lost profits by another name.

The government also asserts that "Anchor seeks to circumvent this Court's conclusion that Anchor had not proven lost profits for 1996 and 1997," and that "Anchor is really requesting an enhancement of lost profits … based upon the real-world profits of a different company." Response at 4, 5; *id.* at 5 ("Anchor is requesting RFC profits that it did not prove, under the guise of NAMCO retained earnings").  But this characterization is undermined by the same holding recited above, that Anchor is entitled to mitigation damages in the form of "the costs of acquiring NAMCO," as measured in the first instance by "the full cost of the NAMCO acquisition."  81 Fed. Cl. at 126, 132-33.

The government thus distorts Anchor's argument.  Anchor is not seeking NAMCO's earnings as a form of lost profits; rather, Anchor is asserting that the Court erred in calculating the offset to its award of the NAMCO mitigation cost.  Indeed, Anchor's appeal of the offset calculation is <u>predicated</u> on the fact that the trial court rejected lost profits for 1996-97.  Because no lost profits were awarded for those years, there could be no double recovery that would justify extending the mitigation damages offset to those years.

### 3. Anchor has not been "compensated" for NAMCO's retained earnings.

The government next states the tautology that "[w]hen [Anchor] paid NAMCO's shareholders for retained earnings, it received an equal amount of retained earnings as part of NAMCO," and thus "Anchor has accordingly already been compensated for the portion of the

NAMCO purchase price comprised of retained earnings." Response at 6. In fact, retained earnings are a form of capital. Anchor, 81 Fed. Cl. at 78; First Commerce Corp. v. United States, 60 Fed. Cl. 570, 593 n.25 (2004). What the government is doing is falling back on its fallacious argument that the acquisition of capital is a "net zero sum transaction" (Response at 6), which this Court has rejected time and time again. Bank of America, FSB v. United States, 67 Fed. Cl. 577, 587-88 (2005); Home Savings of America, FSB v. United States, 57 Fed. Cl. 694, 708-09 (2003), *aff'd in relevant part*, 399 F.3d 1341, 1354 (Fed. Cir. 2005); LaSalle Talman Bank, FSB v. United States, 45 Fed. Cl. 64, 105-06 (1999), *aff'd in relevant part*, 317 F.3d 1363 (Fed. Cir. 2003).

The simple fact is that Anchor mitigated its damages by replacing RFC with NAMCO, a company whose volume of business and earnings were "remarkably similar" and "virtually identical" to RFC. 81 Fed. Cl. at 130. NAMCO's scale and profitability could only be generated from a base of capital, and Anchor had to buy NAMCO's capital base (including its retained earnings) in order to fully mitigate. Anchor is therefore entitled to the full purchase price (subject only to the offset to avoid double-counting lost profits awarded for 1990-95).

**4.     The record permits limiting the offset to NAMCO's 1990-95 retained earnings.**

The government finally attempts to defend the Court's calculation by stating that there was no way to value the portion of the NAMCO purchase price that comprised retained earnings, because there was "no record evidence" of NAMCO's retained earnings. Response at 7, 10. But this is the very error that Anchor contends the Court made. The record evidence <u>that the Court itself relied on</u> does in fact provide the amount of NAMCO's retained earnings through the end of 1995, providing a simple method for adjusting the award of mitigation costs to avoid offsetting "a 'double counting' that did not actually occur." 597 F.3d at 1373; *id.* (stating that it

appears that "because no lost profits were awarded for 1996 and 1997, there could have been no double recovery that would justify extending the offset of mitigation damages to those years"). This evidence and this calculation were laid out at pages 4-5 of Anchor's Motion -- and the government makes no attempt to challenge either the evidence or the calculation.

## CONCLUSION

For the reasons set forth above, and in plaintiff's initial Motion, Anchor respectfully requests the Court to correct the amount of the offset to Anchor's mitigation damages from $165.1 million to $101,909,000 -- a differential of $63,191,000 -- and thereby increase the award of mitigation costs from $185.9 million to $249,091,000.

Dated:  July 23, 2010                                              Respectfully submitted,


Of Counsel:                                                        ‎  /s/ Edwin L. Fountain
George T. Manning                                             Edwin L. Fountain
Adrian Wager-Zito                                               JONES DAY
Debra S. Clayman                                               51 Louisiana Avenue, N.W.
                                                                          Washington, DC  20001
                                                                          (202) 879-3939 (phone)
                                                                          (202) 626-1700 (fax)
                                                                          elfountain@jonesday.com

                                                                          *Counsel of Record for plaintiff*
                                                                          *Anchor Savings Bank*

WAI-2973140v1

- 7 -

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 23rd day of July, 2010, I caused the foregoing PLAINTIFF'S REPLY IN SUPPORT OF MOTION ON REMAND FOR CORRECTION OF AWARD OF MITIGATION DAMAGES to be filed pursuant to the Court's electronic filing system.

_____/s/ Edwin L. Fountain_____

WAI-2973140v1