# ATTACHMENTS

TABLE OF CONTENTS

Live Tape Transcript Pages 1-13 dated June 8, 2010. . . . . . . . . . . . . . . . . . . . . . . . . . EXHIBIT A

Letter from Jacob A. Schunk (Department of Justice) to
Edwin L. Fountain (Jones Day) Re: Motion For a Tax Gross-Up . . . . . . . . . . . . . . . . EXHIBIT B

Letter from Jacob A. Schunk (Department of Justice) to
Edwin L. Fountain (Jones Day) Re: Response To June 25th Letter. . . . . . . . . . . . . . . . EXHIBIT C

Plaintiff's Objections And Responses To Defendant's Revised Request
For Supplementation Of Defendant's First Phase II Case-Specific
Requests For Production Of Documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXHIBIT D

Defendant's Revised Request For Supplementation of Defendant's
First Phase II Case-Specific Requests For Production of Documents. . . . . . . . . . . . . EXHIBIT E

# Exhibit A

# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ANCHOR SAVINGS BANK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Docket No. 95-39C |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) | |

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on June 11, 2010.)

Pages: 1 through 13

Place: Washington, D.C.

Date: June 8, 2010

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
contracts@hrccourtreporters.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANCHOR SAVINGS BANK,              )
                                  )
         Plaintiff,               )
                                  )
v.                                )   Docket No. 95-39C
                                  )
THE UNITED STATES,                )
                                  )
         Defendant.               )

                               Tuesday,
                               June 8, 2010

<u>Live Tape</u>

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on June 11, 2010.)

    BEFORE:  HONORABLE LAWRENCE J. BLOCK
             JUDGE

    APPEARANCES:

<u>On Behalf of Plaintiff</u>:

EDWIN L. FOUNTAIN, Esquire
Jones Day, et al.
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

Heritage Reporting Corporation
(202) 628-4888

APPEARANCES:     (Cont'd.)

<u>On Behalf of Defendant</u>:

JACOB A. SCHUNK, Esquire
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C.  20530
(202) 616-0320

1          P R O C E E D I N G S

2                                              (1:33 p.m.)

3          THE COURT:  All right.  I understand that we are

4  dealing with three issues today and that we are setting a

5  schedule on; the amount of the growth up board, and the

6  possible error in this Court's calculation of the mitigation

7  damages, and the trial costs.  Last night at the close of

8  business the government filed an objection; is that correct?

9          MR. SCHUNK:  Yes, Your Honor.  this is Jacob

10 Schunk.  We filed a motion to dismiss the bill of costs

11 yesterday afternoon, Your Honor.

12         THE COURT:  Okay.  Mr. Fountain, of course I am

13 going to give you -- I am not even going to talk about that,

14 but of course I am going to give you time to respond.

15         MR. FOUNTAIN:  Yes, Your Honor.  This is Edwin

16 Fountain.  As you know, there are three matters for the

17 court to deal with on remand.  One is the issue sent back

18 down by the Federal Circuit.

19         THE COURT:  Correct.

20         MR. FOUNTAIN:  Then there is the gross bill of

21 costs.

22         THE COURT:  Correct.

23         MR. FOUNTAIN:  We have an agreement with the

24 Department of Justice on a briefing schedule with respect to

25 the remanded issue.  That is contained in their -- in the

1  government's response to the court's order setting a status
2  conference.
3         We are prepared to file our brief on that issue
4  this Friday, June 11th. We have agreed that the government
5  can have until July 9th to respond, and we will reply two
6  weeks after whatever date they filed their response.
7         THE COURT: And that schedule is acceptable to the
8  Court.
9         MR. FOUNTAIN: All right. We also prepared to
10 file our motion for a tax gross up this Friday. The
11 government has suggested that that ought to be deferred. We
12 think that is improper.
13        It has been the standard practice of this court in
14 awarding gross tax gross ups to include the gross up in the
15 underlying judgment itself, rather than separating them.
16 That is how it has been done, for instance, in the American
17 Federal case, Fifth Third, LaSalle Talmon, Home Savings, and
18 First Nationwide, and I would be happy to provide those
19 citations if the Court wishes.
20        THE COURT: Yes, it would.
21        MR. FOUNTAIN: American Federal is 72 Fed.
22 Claims --
23        THE COURT: No, no, no, not now.
24        MR. FOUNTAIN: Okay. Certainly. We can send
25 those over this afternoon.

1               THE COURT: Sure.

2               MR. FOUNTAIN: The reason why there is a wrinkle
3   in this case, Your Honor will recall, is back in 2008 when
4   the Court issued its trial decision, and told us to go
5   update the gross up calculations from what we had done at
6   trial, at that point the real party in interest was
7   Washington Mutual.

8               THE COURT: Yes, I do recall.

9               MR. FOUNTAIN: Right, and so we stipulated, since
10  it was not clear at that time, when Washington Mutual would
11  incur the tax liability, that we would defer the gross up
12  until such time as that could be ascertained.

13              In the meantime, of course, Washington Mutual was
14  seized by the government, and in fact, including this claim
15  and judgment, were sold to J.P. Morgan.

16              THE COURT: Correct.

17              MR. FOUNTAIN: There is no dispute that I am aware
18  of that J.P. Morgan is going to earn profits this year and
19  is going to pay the tax on the judgment this year.  That
20  being the case, we think that the Court ought to follow its
21  customary practice, and go ahead and calculate and award the
22  gross up now.

23              So we are prepared to move forward on that on
24  Friday.  I would be prepared to give the government four to
25  six weeks to respond, because they may want some backup

6

1 information from us, and we will entertain a reasonable
2 request for that. But we think the matter is pretty
3 straightforward.
4        And then the third matter is the bill of costs.
5 These are all compensable costs incurred through trial. We,
6 per the court's rule, we waited until there was a final non-
7 appealable judgment as represented by the decision of the
8 Federal Circuit, and filed our bill of costs.
9        That has been filed, and we filed that last week,
10 and the government's response in the ordinary course will be
11 due at the end of the month. The government has moved to
12 strike that on a hypertechnical ground that there is not an
13 appealable judgment because the judgment has been remanded
14 to the Court for further consideration.
15        I am not aware of any law that suspends the
16 consideration of the bill of costs just because there is a
17 remand. In any case, there is no good reason to wait.
18 Those costs are fixed, and we are the prevailing party, and
19 we see no reason to wait.
20        This case has been going on for 15 years, and the
21 breach occurred over 20 years ago, and we are losing pre-
22 judgment interest on a potentially $450 million judgment,
23 and we want to wrap this thing and bring this thing to a
24 conclusion.
25        THE COURT: Of course you do, and I assume that

1  you will remake these arguments in writing.
2          MR. FOUNTAIN: I will be happy to do so, Your
3  Honor.
4          THE COURT: Yes, in response to the government's
5  motion. As I was trying to say initially that I am keeping
6  an open mind, and I don't want to consider this issue today
7  because the government just filed its motion in opposition
8  to this just yesterday at 5:00, and so I am giving you time
9  to respond in writing in due course.
10          MR. FOUNTAIN: I will be happy to do so, Your
11 Honor.
12          THE COURT: Yes, please. All right. Mr. Schunk,
13 anything in response?
14          MR. SCHUNK: Certainly, Your Honor. In regard to
15 the gross up, I am not sure what the standard practice of
16 the court is, and there are cases cited in our response that
17 indicate that indeed this Court has on several instances
18 instead deferred matters of the gross up until after the
19 conclusion of all of the proceedings, which with this
20 Court's decision back in 2008.
21          And if anything this case warrants that
22 determination now more than then. I mean, this is not a
23 standard case. This case is in fact unique as indicated by
24 Mr. Fountain, but this was purchased out of receivership,
25 and there are issues related to that receivership that makes

1  this case unique and warrants waiting until the conclusion
2  of these proceedings until taxes are actually paid, and
3  until the Court determines whether a tax cost is appropriate
4  and the amount of that gross up.
5       Some of those issues, Your Honor, include the
6  carrying forward perhaps of losses from the receivership.
7  The potential for loss can be carried back, and perhaps most
8  commonly there may be a tax lien at issue in this case which
9  could ultimately --
10      THE COURT: I'm sorry to interrupt you, Mr.
11 Schunk. You are going to make all those arguments, I
12 assume, in the briefing which the scheduling order is going
13 to be signed at the end of the day contains, isn't that
14 true?
15      MR. SCHUNK: Yes, but I thought the Court was
16 requesting a response, but the reason that those issues --
17 and not the substance, but the existence of issues, is
18 important, because if the Court does desire a scheduling
19 order and immediate briefing on the tax gross up, this is a
20 complicated issue, Your Honor, and four to six weeks is not
21 ample time for us to prepare a response.
22      MR. FOUNTAIN: Your Honor, this is Mr. Fountain
23 again. I am not sure that this is a complicated issue. I
24 think that this is speculation on the part of the
25 government. I am not aware of any of these issues that Mr.

1  Schunk suggests.

2           MR. SCHUNK:  Your Honor, we don't have the
3  information yet.  During trial, there was testimony taken as
4  to the amount of the tax rate, which is the proper court.  I
5  mean, they have to establish the tax that is actually going
6  to be paid on this, and for us to understand that, and for
7  us to ascertain what that rate should be, we need all the
8  documentation.

9           We need an expert witness, and we need to need who
10 is going to proffer this evidence for them, and the chance
11 to depose that person, which is why at the trial of this
12 case in the first instance that there was testimony taken as
13 to that.

14          THE COURT:  Well, none of this is for today.
15 Okay.  Maybe we have to take additional testimony.  I don't
16 know.  So what I am trying to do today is create something
17 that the three of us can readily agree on.  It is just some
18 scheduling order, some coherent scheduling order where we
19 can deal with these issues.

20          And if need be we need more information, and we
21 need to take testimony, or I will call for oral arguments,
22 it is premature today.  So the scheduling order that you
23 agree to, Mr. Schunk, will allow you to raise these
24 arguments on that.

25          MR. SCHUNK:  This is Jacob Schunk, Your Honor.

1   No, the scheduling order to which the parties agree
2   addresses only the remand issue.  The parties have not
3   agreed --
4            THE COURT:  Okay.  How do the parties suggest that
5   I deal with this?
6            MR. FOUNTAIN:  What I would suggest, Your Honor,
7   is that we put our motion on for the gross up.  It will have
8   the supporting documentation.  It will lay out our position.
9   We can calculate J.P. Morgan's tax rate this year in the
10  same manner that was done at trial.
11           And by the way at trial there was no testimony on
12  it.  It was done by way of an affidavit that our expert
13  witness provided.
14           THE COURT:  That's correct.  I did review that.
15           MR. FOUNTAIN:  And we will put our motion on, and
16  we suggest that the government have six weeks to respond,
17  and then we will reply, and they can raise their arguments
18  as to whether or not it is premature to award the tax gross
19  up.
20           THE COURT:  Okay.  Mr. Schunk, do you agree that
21  is a possible way to deal with these issues?  You will have
22  six weeks, and if you need more time, then ask for it.
23           MR. SCHUNK:  Well, we can certainly start with six
24  weeks.  I mean, what I have got written down here is that we
25  were hoping to have 75 days.  We can start with six weeks,

1  but this is going to take time for the government to consult
2  with other components at Justice regarding this tax lien
3  issue, and to retain an expert to evaluate whatever we are
4  going to receive from the Plaintiffs, which we don't know
5  what that is going to look like yet.
6          THE COURT:  Well, I am going to set six weeks as
7  the deadline for that, and then if you need an enlargement
8  of time if you are running into difficulties, I will have a
9  kind look at that.
10          But for initially I would like to have it at six
11  weeks.  So you are not going to be prejudiced, and if you
12  run into difficulties and you can't hire someone, or you
13  have to run this by Mr. Geitner or something -- I don't
14  know, we will consider more time at that time.  Okay?
15          MR. SCHUNK:  Thank you, Your Honor.
16          THE COURT:  Thank you.  I will issue two
17  scheduling orders, one for what the parties suggest, and one
18  for the gross up.
19          MR. SCHUNK:  Your Honor, this is Jacob Schunk.
20  One more quick issue.
21          THE COURT:  Of course.
22          MR. SCHUNK:  In regard to the cost issue, if we
23  could stay our response to the actual bill of costs until
24  such time as the court rules on our motion to dismiss, and
25  we could potentially have 21 days after the court rules on

1  our motion to dismiss the bill of costs before our actual

2  assessment response is due.

3          THE COURT:  Okay.  That will be fine.  Any

4  objection, Mr. Fountain?

5          MR. FOUNTAIN:  No objection, Your Honor.

6          THE COURT:  Okay.  Then, Mr. Fountain, you will

7  respond to the motion.

8          MR. FOUNTAIN:  Yes.

9          THE COURT:  Okay.  Is there anything else?

10         MR. FOUNTAIN:  That's all for Anchor, Your Honor.

11         MR. SCHUNK:  And that's all for the Government,

12 Your Honor.

13         THE COURT:  Okay.  Thank you, gentlemen.

14         MR. FOUNTAIN:  Thank you.

15         (Whereupon, at 1:45 p.m., the hearing in the

16 above-entitled matter was concluded.)

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

## CERTIFICATE

DOCKET NO.:     95-39C

CASE TITLE:     Anchor Savings Bank v. U.S.

HEARING DATE:   June 8, 2010

I certify that the foregoing is a true and correct transcript made to the best of our ability from a copy of the official electronic digital recording provided by the United States Court of Federal Claims in the above-entitled matter.

Date:  June 11, 2010

Paul S. Intravia

Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C.  20005-4018