IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 95-39C
(Judge Block)

ANCHOR SAVINGS BANK, FSB,.

          Plaintiff,

v.

THE UNITED STATES,

          Defendant.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR AWARD OF TAX GROSS-UP**

          MICHAEL F. HERTZ
          Deputy Assistant Attorney General

          JEANNE E. DAVIDSON
          Director

          KENNETH M. DINTZER
          Assistant Director

Of Counsel:

| | |
|---|---|
| SCOTT D. AUSTIN | JACOB A. SCHUNK |
| SAMEER YERAWADEKAR | Trial Attorney |
| Senior Trial Counsel | Commercial Litigation Branch |
| | Civil Division |
| VINCENT D. PHILLIPS | Department of Justice |
| AMANDA L. TANTUM | 1100 L STREET, N.W. |
| Trial Attorneys | Attn: Classification Unit, 8th Floor |
| | Washington, DC 20530 |
| | Tele: (202) 616-0320 |
| | Fax: (202) 307-0972 |

AUGUST 27, 2010         Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................. ii

APPENDIX TABLE OF CONTENTS ........................................ iii

BACKGROUND ............................................................. 1

ARGUMENT ................................................................. 5

    I.    A Gross-Up Is Improper At This Juncture Because
          JPMorgan Is Not The Real Party In Interest In This Case ................... 5

    II.   This Court Should Not Award JPMorgan A Tax Gross-Up
          When There Is No Evidence That JPMorgan Believes It Will
          Pay Taxes On The Award ...................................................... 7

    III.  Plaintiff Has Failed To Prove The Rate Or Amount At
          Which Taxes Will Be Paid Upon Any Award ............................. 8

    IV.  A Tax Gross-Up Is Not Appropriate Upon The $63.2
          Million In Retained Earnings Anchor Seeks In Its
          Post-Remand Motion To Increase The Damage Award ................. 10

CONCLUSION ............................................................. 11

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

Anchor Sav. Bank v. United States,
81 Fed. Cl. 1 (2008) .................................................... *passim*

Bank of America, FSB v. United States,
67 Fed. Cl. 577 (2005) ........................................................ 8

Home Sav. of America, FSB v. United States,
399 F.3d 1341 (Fed. Cir. 2005) ............................................... 10

**FEDERAL STATUTES AND REGULATIONS**

31 U.S.C. § 3727(a)(1), (b) .................................................... 6

## APPENDIX TABLE OF CONTENTS

Proof Of Claim dated March 30, 2009 With Attached Addendum to Proof of Claim The Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, Henderson, Nevada .............................. EXHIBIT A

Settlement Agreement dated as of May 21, 2010 ............................ EXHIBIT B

Kenneth J. Malek Expert Report dated August 26, 2010 ...................... EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ANCHOR SAVINGS BANK, FSB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 95-039C |
| ) | (Judge Block) |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AWARD OF A TAX GROSS-UP

Pursuant to this Court's August 11, 2010 scheduling order, defendant, the United States, respectfully submits its opposition to Plaintiff's Rule 60(b) Motion for Award of a Tax Gross-Up ("Pl. Gross-Up Mot."). Plaintiff, Anchor Savings Bank, FSB ("Anchor"), seeks a tax gross-up award without even claiming, much less proving, that any taxes will be paid upon an award. Plaintiff's motion also contains numerous misstatements of both fact and law. In sum, Anchor has failed to prove with any degree of specificity or reliability the amount of or rate at which taxes will be paid upon any judgment. The Court should, accordingly, as it did in 2008, deny plaintiff's motion and delay any tax gross-up award until such time that the real party in interest "actually pays taxes upon the award." Opinion and Order (June 27, 2008) at 3.

### BACKGROUND

In awarding Anchor $356,454,910.91 in damages, the Court found that Anchor had proven entitlement to a tax gross-up upon certain portions of the award. See Anchor Sav. Bank, FSB v. United States, 81 Fed. Cl. 1, 134 (2008) (as corrected by Order, July 16, 2008) ("Anchor I"). The Court relied upon the testimony of Dr. Nevins Baxter, one of plaintiff's expert witnesses, who testified that a gross-up was appropriate upon two components of the award – the

reduced stock sale proceeds and the cost for acquiring North American Mortgage Company ("NAMCO"). Id. at 134-35. Dr. Baxter testified, and the Court agreed, that the Court should apply a gross up to (1) the entire amount in damages related to reduced stock sale proceeds ($42 million), and (2) the effective amount paid for NAMCO ($185,900,000) minus the effective sales price of Residential Funding Corporation ("RFC") in 1990 ($63 million). Based upon these findings, the Court concluded that Anchor was entitled to a gross-up upon approximately $164.9 million of the award. Id. at 135 n. 53.

In determining the rate to be applied to calculate the gross-up, the Court relied upon the testimony from Robert Miles, a senior executive at Washington Mutual Bank. Mr. Miles testified that Washington Mutual Bank was the successor in interest to Anchor and that "Washington Mutual Bank would be the entity that would receive any damages awarded to plaintiff, and that it would be the entity paying taxes on that award." Id. at 134. Mr. Miles also testified that, although Washington Mutual Bank's marginal tax rate in 2006 involved a "fairly involved calculation," a marginal rate of 38 percent "would be about as low a rate as we could ever derive." Id. Mr. Miles's projections indicated that Washington Mutual Bank would pay taxes at a marginal rate of at least 38.3 percent in 2006, when the trial took place, but the Court found that a 38 percent marginal rate would be a "reasonable certain conservative estimate" to "avoid[] even the slightest risk of overcompensating plaintiff and awarding a windfall." Id.

Nonetheless, the Court did not award a gross-up at the 38 percent rate when it issued its judgment in 2008, ordering the parties instead to "meet to determine the appropriate final calculation of the gross-up" based upon the tax rate applicable to Washington Mutual Bank

2

during the year the judgment might be paid, 2008, rather than at the time of trial in 2006. Id. at 153.

In compliance with the Court's order, the parties submitted a "Joint Report of Revised Tax Gross-Up Calculation." Jt. Rpt. (Jun. 16, 2008). The parties represented that "Washington Mutual cannot reliably predict its year-end profit or loss position for 2008," and agreed that "when Washington Mutual actually incurs a tax expense associated with the payment of any award in this case, plaintiff shall be entitled, under Federal Rule of Civil Procedure 60(b), to apply for a gross-up award." Jt. Rpt. at 1. The Court, based upon the parties' representations, ordered that no gross-up would be paid until the plaintiff "actually pays taxes upon the award." Opinion and order (June 27, 2008) at 3.

The United States Court of Appeals for the Federal Circuit subsequently affirmed the $356 million judgment. The Federal Circuit also remanded for a determination of whether, when this Court calculated the damages relating to the plaintiff's purchase of NAMCO, the Court intentionally and properly deducted from the purchase price the earnings NAMCO retained during the two years prior to the acquisition. Upon remand, the plaintiff filed a motion for an additional $63.2 million in damages – NAMCO's purported earnings in 1996 and 1997. The plaintiff also filed a motion for a tax gross up, both upon $164.9 million of the initial award and the $63.2 million sought in the post-remand motion.

Notwithstanding that the plaintiff has not paid any taxes upon the award, the plaintiff argues that the Court should now award a gross-up for taxes that JPMorgan may pay upon the award. Plaintiff's motion represents that, as a result of a September 25, 2008 purchase and assumption agreement between JPMorgan and the Federal Deposit Insurance Corporation as

3

receiver for Washington Mutual Bank ("FDIC-R"), which plaintiff failed to attach to its motion, "JPMorgan acquired substantially all the assets of Washington Mutual Bank, including the Anchor judgment and cause of action." Pl. Gross-Up Mot. 4. Based upon this representation, plaintiff argues that JPMorgan is now the real party in interest and will receive the judgment.

To establish the appropriate tax rate for the gross-up, plaintiff attests that "JPMorgan's profitability, and therefore its taxability, in 2010 are not seriously in doubt." Id. Plaintiff then relies upon the affidavit of James Weyant, managing director of JPMorgan's tax department, for establishing a marginal tax rate of 38.757 percent. Mr. Weyant admits to lacking certainty as to the final marginal rate, but attests that, in addition to 35 percent for federal taxes, "JPMorgan also anticipates being taxed on 2010 income at the marginal state tax rate of 3.757%." Id. at Exh. 1, ¶ 3.

Plaintiff's gross-up motion neither references nor discusses the current dispute concerning ownership of the claim against the Government. On September 26, 2008, the day after JPMorgan signed the purchase and assumption agreement, Washington Mutual, Inc., the holding company for Washington Mutual Bank, filed for bankruptcy protection. As part of the bankruptcy proceedings, at least three entities have claimed ownership of this litigation – Washington Mutual, Inc., JPMorgan, and the FDIC-R. See Complaint, JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc., No. 09-50551 (Bankr. D. Del. filed Sept. 11, 2009), at ¶ 125 (JPMorgan's claim); Am. Answer and Counterclaims, JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc, No. 09-50551 (Bankr. D. Del. filed Sep. 11, 2009), at 45-46 and ¶¶ 168-171 (Washington Mutual, Inc.); Exh. A (FDIC-R's Proof of Claim) at ¶¶ 36-37.

In an effort to resolve that dispute, along with tax claims for billions of dollars, those parties have now proposed a conditional settlement agreement. This proposed agreement, which has not been approved by the bankruptcy court, provides that JPMorgan owned this claim as of September 26, 2008, the same day that Washington Mutual, Inc. filed for bankruptcy protection. See Exh. B at 40 (§ 2.13(b)). The proposed settlement does not explain why this term is necessary if JPMorgan, in fact, acquired the Anchor claim in 2008. The conditions for the proposed settlement to become effective have not yet occurred. Id. at 68 (§ 7.2).

## ARGUMENT

The Court should deny plaintiff's motion for a tax gross-up because (1) plaintiff seeks a gross-up based upon JPMorgan's tax rate, but JPMorgan is not the real party in interest in this case; (2) plaintiff has failed to provide any evidence that JPMorgan intends to pay taxes upon any judgment, or the rate at which JPMorgan intends to pay; (3) plaintiff has failed to provide any reliable evidence of the rate or amount of taxes applicable to this award; and (4) plaintiff erroneously seeks a gross-up upon damages awarded to compensate plaintiff for lost profits.

### I.  A Gross-Up Is Improper At This Juncture Because JPMorgan Is Not The Real Party In Interest In This Case

Plaintiff's gross-up motion is premature and unfounded because JPMorgan is not the real party in interest.

As we established in our Motion to Dismiss filed August 2, 2010, JPMorgan is not the real party in interest in this case because, as part of the purchase and assumption agreement entered into by the FDIC and JPMorgan in 2008, the FDIC expressly excepted certain litigation claims, including this one, from the list of assets being acquired by JPMorgan. See Def. Mot.

Dismiss (Aug. 2, 2010). Had JPMorgan purchased the claim on September 25, 2008, while the parties were briefing the appeal, JPMorgan was required to calculate the fair market value of the litigation as a contingent asset in its Form 8594 filing at the end of the 2008 tax year. See Malek Expert Rep. (August 27, 2010) ("Malek Rpt.) ¶¶ 63-64 (attached as Exh. C). JPMorgan, however, admits that, as part of its tax preparation for 2008, it "did not specially allocate any portion of the sales price to the Anchor judgment." Pl. Opp'n to Def. Mot. For Enlargement of Time (July 23, 2010) at 3. JPMorgan's failure to allocate any portion of the award further demonstrates that JPMorgan did not acquire this claim in 2008, that JPMorgan is not the real party in interest in this litigation, and that the gross-up motion based upon JPMorgan's potential tax liability is meritless. See Malek Rpt. ¶ 83.

Similarly, the conditional settlement agreement entered into as part of the Washington Mutual, Inc. bankruptcy proceedings, which purports to provide JPMorgan with ownership of this claim, is insufficient to make JPMorgan the real party in interest in this case. First, the settlement agreement is conditional, and all the conditions for the agreement to become effective have not occurred. Second, the settlement agreement would not be effective to transfer this claim to JPMorgan in any event both because the Assignment of Claims Act prohibits the assignment of claims against the Government, see 31 U.S.C. § 3727(a)(1), (b), and because the FDIC does not have authority to settle litigation involving the United States. See Def. Mot. to Dismiss (Aug. 2, 2010) at 9. Finally, the settlement agreement reveals that JPMorgan recognizes that it does not currently own the claim because (1) JPMorgan negotiated for a new agreement to make it owner of the claim; and (2) the settlement agreement purports to make JPMorgan owner of the claim on September 26, 2008, rather than the date of the initial purchase and assumption

agreement – September 25, 2008. Although post-dating the settlement agreement until after the bankruptcy petition's filing provides the parties with the advantage of avoiding certain challenges to the transfer's validity, see Malek Rpt. ¶¶ 7, 43, the post-dating convincingly demonstrates that the parties to the agreement hold no belief that ownership of the claim previously transferred to JPMorgan on September 25, 2008.

## II. This Court Should Not Award JPMorgan A Tax Gross-Up When There Is No Evidence That JPMorgan Believes It Will Pay Taxes On The Award

Even if JPMorgan were the real party in interest, plaintiff's motion should also be denied because JPMorgan has failed to allege, much less provide any evidence, (1) that JPMorgan will pay taxes upon the award, or (2) that JPMorgan will pay a specific rate of taxes upon the award.

In contrast to testimony Anchor proffered during the 2006 trial, when a Washington Mutual Bank executive testified that the bank would be receiving the award and paying taxes upon the award, see Anchor I, 81 Fed. Cl. at 134, there is no evidence in this record either that JPMorgan will receive the award or that JPMorgan expects to pay taxes upon the award. The three paragraph declaration attached to plaintiff's motion says nothing about whether JPMorgan intends to pay taxes upon the award or the tax rate JPMorgan expects to face; the declaration establishes only that Mr. Weyant "expect[s] JPMorgan's marginal tax rate in 2010 to be approximately 38.757%." Pl. Gross-Up Mot. at Exh. 1, ¶ 3. Absent even assertions by a JPMorgan executive that JPMorgan will pay taxes on the award, and the amount JPMorgan intends to pay, this Court should not (and cannot) award the plaintiff any of the more than $100 million sought in the gross-up motion.

### III. Plaintiff Has Failed To Prove The Rate Or Amount At Which Taxes Will Be Paid Upon Any Award

Even assuming that JPMorgan were the real party in interest and that it is entitled to a gross-up, outcomes with which we disagree, a gross-up would still be inappropriate at this juncture because there is no reliable evidence establishing how much tax, if any, JPMorgan will pay upon the award.

Where the amount and rate of taxes to be paid upon an award are "reasonably certain," an award of a gross-up prior to payment of taxes may be appropriate. See Anchor I, 81 Fed. Cl. at 135. Where, however, the amount to be taxed or the rate of taxation are not reasonably certain, the Court should not award a gross-up and, instead, should allow the party that collects the judgment, if taxes are ultimately paid, to file a motion for a gross up pursuant to Rule 60(b). See, e.g., Bank of America, FSB v. United States, 67 Fed. Cl. 577, 596-97 (2005). In this case, the amount of taxes that may be paid upon an award is uncertain because (1) ownership of the claim is uncertain; (2) even if the Court were to find that JPMorgan owns the claim, it is unclear for tax purposes both when JPMorgan acquired the claim and how much of JPMorgan's purchase price for Washington Mutual Bank's assets should be allocated toward the claim; and (3) the bankruptcy parties' inclusion of the claim in the settlement could change the nature of the acquisition and cause further uncertainty as to how the judgment will be treated for tax purposes.

First, the Court should deny JPMorgan's motion because there has been no resolution of the disputes concerning the claim's ownership. Currently, JPMorgan, Washington Mutual, Inc., and the FDIC-R all have asserted ownership over this claim. An award of a gross-up based upon JPMorgan's tax rate is speculative and premature because no court has declared JPMorgan owner

of the claim and no evidence has been introduced concerning the relevant tax rates of either the FDIC-R or Washington Mutual, Inc.

Second, even if the dispute concerning claim ownership were resolved in JPMorgan's favor, the date JPMorgan acquired the claim and how much of the purchase price should be allocated for the claim are unknown. The claim's fair market value at the time it was acquired has important tax implications for JPMorgan. See Malek Rpt. ¶ 75. Plaintiff, nevertheless, has offered no evidence of the claim's value during either 2008 or 2010. Plus, the claim would be valued differently in 2008 (while the parties were briefing the appeal) than in 2010 (when the Federal Circuit issued its opinion). Moreover, even if the 2010 agreement were to effectuate a transfer of the claim, it is unclear whether the Internal Revenue Service would recognize a retroactive transfer to 2008. Malek Rpt. ¶¶ 56-61. Given the uncertainty as to when JPMorgan will be treated as taking ownership of the claim and the absence of any evidence as to how JPMorgan did or should have valued the claim in either 2008 or 2010, it is unclear how much tax, if any, JPMorgan will pay upon the award (or even how much JPMorgan thinks it will pay upon the award).

Third, the tax uncertainties are multiplied because the 2010 proposed settlement agreement may change the nature of the underlying acquisition. Although JPMorgan currently frames the acquisition as taking place in 2008, the 2010 proposed settlement agreement may allow JPMorgan to recast its acquisition of the claim when dealing with the IRS. Instead of having purchased the claim in 2008, JPMorgan may assert for tax purposes that it received the claim in 2010 in exchange for settling unrelated claims in an effort to decrease its tax liability. In that event, the tax rate is uncertain because JPMorgan has provided no analysis as to what it is

9

claiming as damages in the bankruptcy proceeding. It is also unclear whether, if JPMorgan took the position that its receipt of the <u>Anchor</u> claim were settlement for unrelated claims, the IRS would agree with JPMorgan's characterization.

## IV. A Tax Gross-Up Is Not Appropriate Upon The $63.2 Million In Retained Earnings Anchor Seeks In Its Post-Remand Motion To Increase The Damage Award

If the Court grants plaintiff's motion to increase the damages award by $63.2 million, a result with which we disagree for the reasons discussed in our response to Anchor's motion, the Court should not gross-up the additional award. A gross-up upon the $63.2 million additional award would be unjust because the $63.2 million would have been taxable in the normal course of business. It is fundamental that a tax gross-up is not appropriate where, instead of being compensated for lost monies that would not have been taxable, a plaintiff is being compensated for monies, like lost profits or earnings, that would have been taxable in the normal course of business. See <u>Home Sav. of America, FSB v. United States</u>, 399 F.3d 1341, 1356 (Fed. Cir. 2005).

In the initial $356 million award, this Court awarded plaintiff the cost for acquiring NAMCO, but properly deducted NAMCO's retained earnings for the years prior to the acquisition because the plaintiff had sought a separate lost profits award for those years. <u>Anchor I</u>, 81 Fed. Cl. at 133. Although the Court did not award lost profits for the two years immediately preceding the acquisition – 1996 and 1997 – because Anchor's damages claim for those years was not reliable or reasonable, the Court properly deducted all of NAMCO's earnings from the overall damages calculation. <u>Id.</u> at 121. In its post-remand motion, plaintiff seeks compensation for NAMCO's "retained earnings for 1996 and 1997 . . . [because] there was no corresponding

10

award of lost profits for those years." Pl. Mot. On Remand (June 11, 2010) at 4. Retained earnings, like lost profits, are taxable, and grossing up an award compensating plaintiff in the amount of NAMCO's retained earnings would therefore result in an unjust windfall.

Similarly, grossing up the award would be illogical. Had plaintiff been able to prove its lost profits for 1996 and 1997, the award would not be subject to a gross up. Now, however, because plaintiff failed to prove its lost profits for 1996 and 1997, it would receive an even higher recovery than had it proven its damages because the Court would apply a gross-up to NAMCO's retained earnings.

Accordingly, in the event the Court awards plaintiff an additional $63.2 million in damages, the Court should not apply a gross-up to the additional award.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny Anchor's motion for a tax gross-up.

Respectfully submitted,

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

|  |  |
|---|---|
| OF COUNSEL: | /s/Jacob A. Schunk |
|  | JACOB A. SCHUNK |
|  | Trial Attorney |
| SCOTT D. AUSTIN | Commercial Litigation Branch |
| SAMEER YERAWADEKAR | Civil Division |
| Senior Trial Counsel | Department of Justice |
|  | 1100 L Street, N.W. |
| VINCENT D. PHILLIPS | Attn: Classification Unit, 8th Floor |
| AMANDA L. TANTUM | Washington, D.C. 20530 |
| Trial Attorneys | Tele: (202) 616-0320 |
|  | Fax: (202) 307-0972 |
| August 27, 2010 | Attorneys for Defendant |

## CERTIFICATE OF SERVICE

I certify that on this 27th day of August, 2010, I caused the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR AWARD OF A TAX GROSS-UP" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/Jacob A. Schunk