# United States Court of Federal Claims

No. 95-39
Filed August 31, 2012
**Not for Publication**

---

**ANCHOR SAVINGS BANK, FSB,**

    *Plaintiff*,

**v.**

**UNITED STATES OF AMERICA,**

    *Defendant.*

Motion to Intervene; Subject-Matter Jurisdiction; Collateral Attack; RCFC 24

---

    *Edwin Louis Fountain*, Jones Day, Washington, DC, for plaintiff.

    *Jacob A. Schunk*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

    *Linda Neufeld*, *pro se*.

    *Paul Allan Traina*, Engstrom, Lipscomb & Lack, Los Angeles, CA, for intervenor-plaintiff-applicants.

## OPINION AND ORDER

**Block,** *Judge*.

    Before the court are two motions to intervene filed by owners of Dime Litigation Tracking Warrants, which are securities that derive their value from the outcome of this litigation. Also before the court is defendant's motion to strike several letters written by alleged Litigation Tracking Warrant owners. The movants and some of the letter-authors seek to intervene in this litigation; other letter-authors wish to merely inform the court of the plight of Litigation Tracking Warrant owners. However, as will be explained below, the bankruptcy court handling Washington Mutual, Inc.'s bankruptcy had already decided the issues underlying the warrant owners' motions to intervene and raised in the letters written by alleged warrant owners. Therefore, the warrant owners' motions to intervene will be denied. And because none of the warrant owners' letters were filed as motions, as required by RCFC 7(b), defendant's motion to strike the letters will be granted.

## I. The Litigation Tracking Warrants

The Litigation Tracking Warrants were issued by Dime Bancorp, Inc., the successor-in-interest to Anchor Savings Bank. According to SEC Filings associated with the Litigation Tracking Warrants, the warrant owners would be entitled to shares of Dime Bancorp, Inc. common stock once plaintiff has, among other things, prevailed in this action and collected its judgment. Dime Bancorp, Inc., Form 8-A, SEC File 0-32125, Ex. 3, *available at* http://tinyurl.com/dimeltw8a. A $356 million judgment was entered in plaintiff's favor in 2008. *Anchor Sav. Bank, FSB v. United States*, 81 Fed. Cl. 1 (2008). That judgment was appealed and subsequently remanded so this court may clarify how it calculated damages. *Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1373–74 (Fed. Cir. 2010), *aff'g in part, remanding in part*, 81 Fed. Cl. 1 (2008).

Prior to the 2008 judgment, Dime was acquired by Washington Mutual, Inc ("WMI"), the holding company of Washington Mutual Bank ("WMB"). WMI ratified the Litigation Tracking Warrant Agreement, thereby stepping into the shoes of Dime Bancorp, Inc. *In Re Washington Mutual, Inc.* (*WMI*), 464 B.R. 656, 659 (Bankr. D. Del. 2012). Pursuant to the amended Litigation Tracking Warrant Agreement, WMB "would continue the prosecution and control of the Anchor Litigation and, upon receipt of any recovery, the LTW Holders [would be] entitled to receive common stock of WMI having a value representing eighty-five percent (85%) of the net recovery." Pl.'s App. 3 at 17, ECF No. 360-3; *see WMI*, 464 B.R. at 659.

Nevertheless, WMB was one of many institutions to fail during the 2008 Global Financial Crisis. The bank was seized by the Office of Thrift Supervision ("OTS") on September 25, 2008. *See WMI*, 464 B.R. at 660. WMB was then placed with the FDIC for receivership. *Id.* The FDIC then sold WMB to JPMorgan Chase in a whole-bank purchase and assumption transaction, a common method for resolving large bank failures. *See id.* With its most significant asset in the hands of another bank, WMI had no choice but to file for bankruptcy on September 26. *Id.*

## II. Washington Mutual, Inc.'s Bankruptcy

The Litigation Tracking Warrant owners filed claims as a class in the WMI bankruptcy. They alleged that their warrants were debt obligations of WMI. *Id.* at 658. WMI disagreed, contending that these warrants constituted equity interests in WMI. *Id.* at 660. The dispute over the warrants' character is significant because in bankruptcy, a failed company's creditors get paid before the bankrupt company's common shareholders. *See* 11 U.S.C. § 510(b) (claims arising from the purchase or sale of equity securities must be subordinated); *see also* 11 U.S.C. § 101(16)(C) (definition of "equity security" includes warrants).

On January 3, 2011, the bankruptcy court held that the Litigation Tracking Warrants were equity, not debt, and subordinated the warrants to the status of common shareholders. *WMI*, 464 B.R. at 667, 670. This meant that the warrant owners were not likely to receive much for their warrants, regardless of what happened in the Anchor Litigation. Most important for our purposes, the bankruptcy court found "that ***the LTWs do not entitle the LTW Holders to an***

*interest in the Anchor Litigation itself.*  They are only entitled to the issuance of common stock in WMI." *Id.* at 671 (emphasis added); *see id.* at 660–61.

### III. Discussion

RCFC 24(a) requires the court to permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action."  In cases where a non-party asserts "a claim or defense that shares with the main action a common question of law or fact," the court may, in its discretion, permit the non-party to intervene.  RCFC 24(b).  Under neither standard is intervention warranted.

In this case, intervention is not required under RCFC 24(a) because the warrant owners have no interest in the property or transaction that is the subject of this action.  The warrant owners claim otherwise.  In their motions to intervene and in their letters submitted to the court, the warrant owners claim that they are ***directly*** entitled to 85% of the proceeds of the *Anchor* judgment by virtue of owning Litigation Tracking Warrants.  But this is not true.  As the bankruptcy court explained, the warrants do not "entitle the LTW Holders to an interest in the Anchor Litigation itself."  *Id.* at 671.  Thus, the warrant owners have no property interest sufficient to require intervention under RCFC 24(a).

Allowing the warrant owners to intervene is also inappropriate under the rule for permissive intervention.  RCFC 24(b).  Far from sharing a "common question" with the main action in this case, the warrant owners raise claims that amount to nothing less than a collateral attack on a bankruptcy court's judgment.  This court does not have jurisdiction over such claims.  *See Allustiarte v. United States*, 256 F.3d 1349, 1351–52 (Fed. Cir. 2001).  If the warrant owners wish to challenge the bankruptcy court's judgment, then the proper venue for asserting such an appeal is the United States District Court for the bankruptcy court's district, which in this case is the District of Delaware.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995).  Because the warrant owners' claims constitute a collateral attack on the bankruptcy court's judgment, the court cannot permit the warrant owners to intervene under RCFC 24(b).

Finally, to the extent the letter-authors have informally requested to intervene, their requests must be denied.  Requests for court orders must be "made by motion."  RCFC 7(b)(1).  The letter-authors' requests were not "made by motion."  *Id.*  Therefore, defendant's motion to strike the letters will be granted.

## IV. Conclusion

In summary, the court hereby enters the following orders:

- Defendant's Motion to Strike, ECF No. 349, is GRANTED.
- Neufeld's Motion to Intervene, ECF No. 354, is DENIED.
- Rosenbaum, et al.'s, Motion to Intervene, ECF No. 357, is DENIED.

IT IS SO ORDERED.

s/ *Lawrence J. Block*

Lawrence J. Block
Judge